Jr. at all. At this time, would Councilman McCollum please introduce himself on the record so we can get it. My name is Eric McArthur. On behalf of the federal defendants, I would like to reserve five minutes for rebuttal, if I may. Okay, and before you proceed, let me just welcome everybody who is from out of town. I know not everybody is from here. Some people have traveled long distances. So everybody, welcome to the Court of Appeals for the First Circuit. So with that said, you may begin. Thank you, Judge. Helpfully, I may have pleased the Court. In the Reconciliation Act of 2025, Congress, in an exercise of its core Article I power of the purse, determined that taxpayer funds should no longer be used to subsidize major abortion providers participating in the Medicaid program. Nothing in the Constitution precludes that legislative choice. As the Supreme Court has repeatedly held, even before Dobbs returned the issue of abortion to the political process, Congress may make a value judgment favoring childbirth over abortion and implement that value judgment by the allocation of public funds. So I would say your position is in accord with Judge Walker's decision in the District Court of Maine, correct? That is correct. There are some additional claims raised in this case that weren't presented in the Maine Family Planning case. But yes, our position here is very much in accord with the District Court's judgment. In fact, the Maine argument is not in that case, right? I mean, their lead argument is Bill of Attainer, which is really focused on the targeting of the law against Planned Parenthood, which is really not in the Maine case, because that Maine entity is kind of a, I won't call it an afterthought, that's not the fair thing, but kind of brought in, but not really the purpose of the law, right? That's correct. There was no Bill of Attainer claim in the Maine Family Planning case. That is their lead argument here. But this law clearly does not fall within the narrow class of laws prescribed as Bills of Attainer, that is, laws that legislatively determine guilt and inflict punishment upon an identifiable individual without a judicial trial. Just as to Bill of Attainer, the two main entities are not affiliates to Planned Parenthood, correct? In the Maine case, that is correct. They are not in any way affiliated. So this law applies at least to those two main entities as it applies to Planned Parenthood or any other entity that would carry the same services, correct? That is absolutely correct, Judge Shelby, and that's because Congress here enacted a statute that sets generally applicable prospective conditions for participating in a federal benefits program. And the Supreme Court has never invalidated a law that works anything like that under the Bill of Attainer clause. Can we just talk a little bit about enforcement or implementation, which I think you mentioned right when you started. Where are we? The briefs here have been filed within the last month. What is the government doing in terms of implementing the statute? Because a lot of what we need to figure out today is this meaning of the word affiliates, and I think your position is, well, it depends on how we apply the statute. So HHS is in the process of implementing the statute. My understanding is that they are working on guidance around the affiliate provision, but that guidance hasn't been issued yet, and so I'm not in a position to tell you what it will say, other than that I can say that HHS has no intention to define the term affiliate in such a way that it turns on expressive activity as opposed to corporate control. Your brief talks about corporate control. I think it cites blacks at least once. Is that the version? I mean, the word affiliate is an interesting word because it can be used in different ways. There's a colloquial affiliate. I'm affiliated with Judge Helpe because we know each other through the First Circuit. That's an affiliation. But as I understand blacks' law as affiliation, that's more of a corporate concept of control through subsidiary, parent, shareholders, a much more formal definition, and I think it's important that I understand what we're talking about, and are we talking about that latter idea of affiliate? Yes, we understand it the same way that you do, Judge Avery, and I think that the term affiliate here draws meaning from the words that surround it that make clear this isn't used in any sort of colloquial sense. It says a prohibited entity means an entity including its affiliates, subsidiaries, successors, and clinics, so it's used in that classic corporate law sense. So here, if the various members of Planned Parenthood are affiliates of each other, and the agency has not yet made any determination about whether they are, but if they are, it's because they are under the common control of the Federation. So when I look at your brief at page 24, I see that corporate control understanding throughout your briefing, and I think if you hewed just to that, there might not be a problem at all. But then I see on page 24 you speak to affiliates as collecting dues from members, helping with fundraising, helping with advocacy. And in that way, I don't see that tight, narrow corporate definition. So are you also taking the position that those types of activities speak to or meet the corporate control narrow definition? Simply providing funding by itself would not suffice to make an entity an affiliate. And our point there, I think, is somewhat different, Judge Monte Carlo. We're not saying that the fact that the members pool resources necessarily means that they are affiliates. It's actually the reverse of that. What we're saying is that when entities are affiliates, when they are part of the same corporate family, Congress can make a reasonable judgment that they are likely to pool resources. Could you tell us, as of now, there's ten Planned Parenthood members who do not provide abortions? That's still a fact, right? My understanding is it's three that don't provide abortions, ten total that don't independently satisfy. Let's say those three that don't provide abortions. Does the government have a position whether they're affiliated or not, or you would have to wait until the Department of Health and Human Services defines that? The latter. We do not have a position on whether those non-abortion-providing members are affiliates. Our point is simply that if they are, it will be because they are under the common corporate control of the parent organization, Planned Parenthood Federation, and there's nothing expressive about that. And that is the key error that the district court made here. On the record below at this time, there's no finding that they're part of the corporate conglomerate, subsidiaries or anything. Let me ask you, is this issue not ripe until the regulation comes out in the government's position? That was our position below. The district court rejected that argument because the way the court looked at it was at that time, the court said the October 1st date is coming and the various members have to make a decision about whether they're going to disaffiliate before October 1st. And the court thought that created a chilling effect on their First Amendment rights. And so the court- If we were to reverse the preliminary injunction in that respect as affiliates, it would be without prejudice of the regulation being enacted and the plaintiffs getting a second opportunity to challenge that before the judge at some other point. Am I correct? That's your position? It would depend on on what ground the court vacated the injunction. Of course, we're asking the court to vacate the injunction on the ground that the district court entered the injunction, that there's a First Amendment problem here. But certainly it would be open to them on remand. They have a claim that they brought that wasn't adjudicated below that asks for a declaratory judgment. Let's assume we were to side with the government and find that there's no First Amendment problem here subject to whatever happens with the regulation. That could be another possibility, right? It still wouldn't be right in your view. Well, I do think it is right for this court to decide because the district court entered an injunction on that basis. But if the injunctions are vacated, they could still litigate their declaratory judgment claim below. And their declaratory judgment claim is- If we agree with you that affiliators control that definition, let's just say we're using the Black's Law definition, and that's the definition. And the district court- Well, we have our affidavit declarations. The only evidence I saw are declarations in the record that suggest- that make statements like, we don't control- we, the Federation, don't control these other member entities. They are independent 501c3 corporations. They have their own boards of directors. I mean, that seems to be what the evidence is now. And that does seem to not line up with this idea of corporate control the way that you're defining it. That's the record, isn't it? There's actually very little in the record about what degree of control the Federation- Did I describe their declarations correctly? I think there are some more indications of control in our very limited record here. For example, the declarations that the plaintiffs submitted talk about how the Federation has certain bylaws that dictate the standards, accreditation standards, health care standards that the various members have to meet. There's some indication that the bylaws may dictate the services that the members provide. For example, they have to provide contraceptive care, abortion, things like that. I think those are indications of control, but the record on that really has not been fleshed out at that point, and I do not think that question is before you, whether they are affiliates within that understanding, that corporate control understanding of affiliate. But the key point is, if they are affiliates, it will be because of those types of things that I just listed, dictating what services they have to provide, dictating what medical standards they have to meet, and none of that is expressive activity under the First Amendment. Different affiliate questions. So let's assume the Federation does have control over the members. So they're affiliates. Let's just use Massachusetts. Planned Parenthood of Massachusetts is an affiliate of the Federation. Let's say I accept that as true. Does that make it an affiliate of Planned Parenthood of Utah because they share membership in this organization? What's the control of Utah, in my hypothetical, over Massachusetts? I don't think there is any control over Utah over Massachusetts. No, not for affiliate status. They would be affiliates by virtue of the fact that they are under the common control of a single parent entity, just like two subsidiaries of a parent corporation. They have different boards that make different decisions, control their own budgets. They're just sending money upstream, whereas a collective, they're going to vote what to do with it? I don't think it turns on the sending the money upstream. But, yes, affiliates are always distinct legal entities. Two subsidiaries of a parent corporation are distinct legal entities, but they are part of the same corporate family because they have the same parent. So that would be the same analysis I would expect that the agency will learn here in analyzing whether or not these sister organizations are corporate affiliates. And at this point, your answer is, we just don't know how that's going to turn out. That is correct. I can't prejudge how the agency is going to decide that. Let me ask also, let's assume the agency decides it, and it would go back to the court, and the court decides there's an issue with this. The agency can always go back and court with the court's ruling easier than amending the statute. Am I correct? If that were necessary. Sure, if there were some issue with concluding that these... So what I'm saying is, this would be, depending on the regulation, this would be, I believe it's in one of the, maybe in your reply brief, as an applied challenge, more than a challenge to the statute itself. Am I correct? That's right. And that's another... I'm not quite yet because we don't know exactly, you know. The definition of DHS could be beneficial to the affiliates. Right. At least as of the time this case was litigated in district court, there were 10 members who did not independently satisfy the prohibited entity criteria. The affiliate question really only goes to those 10 entities, and that's another important point here, which is the district court entered an injunction that runs to all members of Planned Parenthood, but at most their First Amendment claim goes to that affiliate provision and affects only those 10 members. Let me ask you this. You were mentioning now that there's all the members of Planned Parenthood and all the affiliates. In the case of Massachusetts, for example, we're aware, and it's in the briefs, the Commonwealth provided, I believe, I don't know how many million dollars to Planned Parenthood. So Massachusetts Planned Parenthood doesn't depend on Medicaid funds. Am I correct? I mean, they receive funding from other sources. Other sources. And different states have been able to provide funding. So my question is, a state like, for example, if Massachusetts received what it would have expected to receive and the federal funding received from the state, doesn't that move Planned Parenthood's Massachusetts claims? I mean, it could potentially move Planned Parenthood's claim. Maybe the state would have a claim in that. There was a brief filed in the state. Let me just make this as concrete as we can. There was a brief filed in the state proceedings by Louisiana that took the position there where I think it was saying there was no standing because either states were saying whether the feds pay, we're not paying Medicaid under the state anyway, and some other states are saying we're going to provide the money if there's a federal shortfall based on the statute. And so Louisiana argued that that defeated standing on the idea that, in their situation, there are two blocks to Planned Parenthood getting money. The federal rule and the state rule. And it's not enough. You don't have standing. You don't have redressability if you're only challenging the federal rule. Do you have any view about that? We haven't challenged the point of standing here, and I haven't seen any indication in the record that Massachusetts or any other state would fully make up the difference for the Planned Parenthood members in terms of what they're receiving from the state and what they're losing from the federal government. So we haven't challenged their standing for that reason. How about the reverse of it where some states say, we don't care what the federal government does, we're not paying our Medicaid funds to Planned Parenthood? I mean, if a state has excluded them separately from... South Carolina did. Right. Yeah, then I would think those members would have no claim. Do we have a record below of where those states fall on those two different lists? Not that I'm aware of, Judge Montecalvo. The record does not speak to that. And let me ask you along those lines. Are the states necessary parties? Because the monies go to the states, and the states are part of this whole scheme. So let's assume we were to uphold the preliminary injunction. That affects the states. Some might say, well, this is positive. We're getting this extra money. But other states, I believe, like Louisiana and some other states, don't want this Medicaid money, and it's being forced upon them. And Medicaid is really like a state-federal partnership. Do you have anything to say to that? I don't have a view to check whether or not they're necessary parties. That issue wasn't raised below or briefed or litigated. And I'm aware nobody's raised it. It's just interesting the amicus filed by the state of Louisiana raised that. Okay. And I'd like to hear when it's the other party's turn to address that briefly also. Okay. Thank you. Let's move on. Maybe we should turn to the bill of attainder issue. Sure. I'd be happy to address that. And I think I have two sort of areas I wanted you to talk about. The first might be the sort of targeting or the legislative intent, and I'm thinking primarily here of the Nixon case and how the Nixon case sort of goes through. Well, what happened in Congress? What did the different reports say? If there's true targeting, that might be enough for a bill of attainder. What's your position on that? So targeting would never be enough because there are two separate elements that you have to meet for it to be a bill of attainder. One is specification and one is punishment. I think the targeting really goes primarily to the specification issue. But the only sort of targeting that the bill of attainder clause is concerned with is when Congress specifically by name identifies an individual or a group or designates them based on what the Supreme Court has called past ineradicable conduct. And Congress did not do that here. Far from it. Again, this is a generally applicable statute, generally applicable terms. It doesn't name Planned Parenthood. And there are prospective terms. But the fact, though, it really only affects Planned Parenthood plus the two main entities. Well, the plus the two main entities is a significant fact. No, I mean, it looks to me like what happened was to get it into a reconciliation bill because if this had to survive a filibuster in the Senate, it's a fair guess to say it wouldn't. So you have to get it past the Byrd Rule and you have to make it so that it appears not to be a target, you know, it's precisely targeted only to one entity. So you expand it just enough to get beyond that so it passes the Byrd Rule. Okay, I follow that procedural, parliamentary tactic, but it doesn't really seem to get to the core of it, which really is that it's specifying the Planned Parenthood members. Well, I would point you just a frame to the Communist Party case because that change from specifying a particular party to having generally applicable terms that may include that party and not many more was something that the Supreme Court described in Communist Party as having crucial constitutional significance. And what the plaintiffs described here as gerrymandering is really just a pejorative term for something that Congress does all the time, and that is to legislate with a particular example in mind and to draw the boundaries of the statute such that that example will predictably fall within the statute's terms. And that is exactly what happened in the Communist Party case where there had been prior bills that had specifically named the Communist Party. The Supreme Court recognized that all of the legislators expected that the Communist Party, if it continued to engage in the sorts of activities that it had historically engaged in, would fall within the statute's terms, and perhaps no other entities would. And what the Supreme Court said is that the statute was not made an attender by the fact that the conduct which it regulates is described with such particularity that in probability few organizations will come within the statutory terms. Legislators may act to curb behavior which they regard as harmful to the public welfare whether that conduct is found to be engaged in by many persons or by one. Can I go back to Judge Montecalvo's question because I don't think what she said is exactly right. So in Nixon it says a third recognized test of punishment is strictly a motivational one, inquiring whether the legislative record convinces a congressional intent to punish. So it seems like even if it's not historical, even if it's not functional, there's a third test of punishment which is a motivational one. I read that right from the Supreme Court. So my question to you is this. It seems like this law, one, is quite under-inclusive, one, because there are all sorts of abortion-providing entities that are not covered. Two, if this affiliate version becomes broader, it seems to me that it's over-inclusive and that it will prevent funding from groups that are not providing abortion, certainly in parenthood entities. And you add on to that statements from the Speaker of the House about big abortion, and, you know, the record has various statements by congresspeople that show a targeting of Planned Parenthood. So at what point, what do we look for? I mean, the Supreme Court is referring to something here. We have a potentially over-inclusive and under-inclusive law targeting a group to deprive them of a substantial amount of funding. At what point does it become punishment-looking? So, Judge Abram, I don't think this law is either over-inclusive or under-inclusive. To begin with, over-inclusivity. Every entity that qualifies as a prohibited entity under this statute either provides abortion or is an affiliate of an entity that provides abortion. And what this legislation is getting at is cutting off federal subsidies for abortion providers. So there's no agency that there's a mismatch between the congressional objectives. You end up using an affiliate definition that is not, you know, at moments in your brief they're more like, okay, what you're getting at is sort of a shell game of money, and I followed that. But then there are other moments, and Judge Montecarlo read the sentence, practical support, technical assistance, fundraising, that go far beyond a very narrow definition of this kind of shell game that you part in your brief express concern about. And at that point, why isn't it fair to say what you're really right about is you don't like this group, you don't like the advocacy they go for, you want to shut down not only the providers but all the affiliates, you've tied them together, you'll get them all at once. Why is that not a proper way to think about what's happening? If you take a broader view, which is why I think most of this case comes down to something you can't answer, which is what's an affiliate? Well, I can answer it to the extent that we do not take that broader view where affiliate status would depend on any sort of expressive activity. And my understanding from the agency is they had no intention of making affiliate status turn on any sort of expressive activity as opposed to corporate control. And again, the point that we were making, I think it was on page 24, is that when entities are part of the same corporate family, Congress can reasonably make the judgment that they are likely to pool resources and share funds such that federal funds given to any one entity could redound to the benefit of the whole corporate family. And that's why I think this is not an over-inclusive statute at all, nor do I think it is under-inclusive. Their main argument as to why this is under-inclusive is because there are other abortion providers that are still allowed to participate in the Medicaid program. But the fundamental problem with that is that Congress can legislate incrementally, focusing on what it views as the most acute aspect of the problem. That's badly motivated, which then gets you to what do you make of a record that has various comments from various members of Congress who are involved in this that suggest they look unfavorably on this group. Judge Afrin, there is zero evidence in this legislative record of any sort of retaliatory or other animus toward Planned Parenthood. What does that even look like? So when the Speaker of the House says, and I'm paraphrasing, so to be fair, but we're going to pass this bill to defund or shut down big abortion. And what does it look like to say, okay, you're going to tell me that's on the acceptable side, and maybe you're right about that. But what does it look like to you when it's not? I mean, if there were a committee report that said we're defunding Planned Parenthood because we object to their ideology or to their collective advocacy, then that's something I think you could look at under that third prong, which the Supreme Court has never invalidated a statute as a bill of attainder based on that third prong and has consistently said there has to be clear and unmistakable evidence of a punitive intent. And here there is zero evidence of punitive intent, which is separate from whether Congress was thinking in particular about Planned Parenthood. And maybe it would help, Judge Afrin, if I just set out what I think the various generally applicable criteria in this statute are trying to get at. What I see is those criteria are a reasonable proxy for the subset of abortion providers participating in the Medicaid program that meet three criteria. One is they receive significant amounts of Medicaid funding. Number two, they are particularly likely to be dependent on that Medicaid funding. And number three, they practice in specialties where they're likely to provide a disproportionate number of abortions. And Congress could reasonably take the view that entities that meet those criteria represent the most acute aspect of the problem in terms of government subsidization of abortion because those are the entities where federal funds are in effect allowing them, in many cases, to exist. And this is something that is borne out by the Planned Parenthood declarations in this case and their story on irreparable harm, which is that if they use federal Medicaid funding, they're going to have to scale back services and that their declarations say a substantial number of their clinics will be at risk of closure. So Congress could reasonably take the view for entities like that that are providing a lot of abortions. At the same time, they're taking a lot of federal money that is, in many cases, keeping them afloat. That is the most acute aspect of the problem in terms of federal funding, enabling the provision of abortions that may not otherwise be provided. And let me ask, for purposes of irreparable harm, I believe it's one of the amicus filed by the states for this, along with the briefs that we're presently entertaining. One of these amicus states that if these clinics close, a lot of people will be unemployed, and it's domino principle. It's going to have a lot of collateral effects. Should that go into the analysis for irreparable harm, assuming the likelihood on the merits prong is there? That's a big assumption. Of course, we don't think you need to reach the equities because there is no likelihood of success. That's step number one. But assuming we have to go into the last step, would that be part of the equation, or it's the irreparable harm to the entities themselves, not everybody who gets the domino effect? It's the former as to irreparable harm. I think you're only looking to the irreparable harm of the parties who are before the court. Now, the public interest analysis could sweep more broadly and look at those various things, potential impacts on patient care and things like that. But the key point here is we're dealing with a congressional statute. Congress has made a judgment about what the public interest requires here, and I think the district court in the main family planning case put it well when the court said it would be a special kind of judicial hubris to conclude that the public interest has been undermined by the public. Let me just follow up. You said this is a congressional act, which it is. So there's no impediment that a future Congress decides, well, we were wrong, let's go back and let's start funding. That's up to the hands of the electorate and whatever composition of a future Congress is, correct? Let's assume that you prevail, the government prevails in this case. That does not impede future Congresses from acting differently than this Congress. That is correct, and that's the fundamental problem with this lawsuit is they have simply brought their claims to the wrong forum. This is only a one-year disqualification from the Medicaid program, so when this expires at the end of whatever it is, July 4th of next year, and Congress is looking at that question again, they're free to go to Congress and try to persuade their congressmen. There may not be a Planned Parenthood a year from now. That's one of the issues. I don't think they've said that this legislation would put Planned Parenthood. Or have any less Planned Parenthood entities. I think they said there may be fewer clinics that may be difficult to reopen if they close because of the lack of funding. The question for us is on a plural injunction, what are we supposed to do from here? Let's assume for a moment I think you're right about the bill of attainders. Let's take that off the table for a second, and let's focus on equal protection. I think that this affiliate definitional question will trigger how this plays out. Because if it's a narrow control-based definition, then that may be permissible. But if it's not, and it's just defunding because you happen to be a member of this organization, assume I think that's problematic. Just assume all that so I can ask my question about what we do next. But we don't know any of that. The answers to those questions I just posed. One, really what does affiliate mean? You tell me what you say, but we don't have the agency saying anything. So I guess question one is under sort of the low-profile idea that we're as good as anybody to figure out what words mean, are we in a position right now to say what we think affiliate means? I think you are in a position, and I wouldn't have any problem with the court-writing opinion that says that the word affiliate in this statute refers to corporate affiliation, which is a matter of control, and does not depend in any way on expressive activity. I would be perfectly fine with that opinion, and if that's what you conclude, then the equal protection analysis runs under rational basis review. And then what do you do about then there is the factual question, the application of the law to the facts. So we say that's what affiliate means, and we don't yet have an adjudication of whether this Planned Parenthood Federation constitutes control under affiliation. Is that something we send back to the district court to have a litigation on? Is that something that has to be held in abeyance until HHS makes its initial determination? How would that be resolved? Because I'm feeling like maybe that is the core. I don't know that we have such a disagreement if we were to write an opinion with the definition. It's the application of the law to these particular facts, which it seems like what a lot of this is going to turn on. When does that happen, where does that happen, and how does that happen? That happens in the district court. I suppose just as soon as the district court is ready to take up that issue. That could happen on remand from this court if and when the injunctions are vacated. As I mentioned, they have a count in their complaint where they seek a declaratory judgment that the entities that do not independently satisfy the prohibited entity criteria are not affiliates within the meaning of the statute because the parent organization does not control them. That's all open to them to litigate on remand. The one thing we're asking this court to decide is on the understanding that this is about corporate affiliation and not expressive activity, there is no even arguable First Amendment issue. I would like to highlight one important Supreme Court case in that regard. Before you do that, I understood one of your answers to my question earlier to be that the record before us has enough in it on this issue of control in the affidavits such that maybe we could look and decide whether or not it met our definition. I don't understand. That issue has not been developed in the district court. There's limited evidence about control. I do not think there's sufficient evidence even for the district court to decide that, let alone for this court as a matter of sort of first impression without any findings. I've read all the materials. There are declarations. They say certain things. There are some facts. There are some conclusory type facts like we don't control the entities. What happened below? What was the opportunity of that to be contested? What do we make of that? Because there is some evidence there, but what happened and why is it not? Everyone had their chance, and that's what the record is, and that's the P.I. record on which we decide. Everyone had a chance, I think, for purposes of the preliminary injunction, but they're calling this one as a declaratory judgment. They think there is such a thing as a preliminary declaratory judgment. Of course, the way this ordinarily works is that the agency will be the first actor and make that determination in the first instance. Let's say we went in with everything I said. The record is complete. Again, assumptions. Assumption one, this definition of control is the one you set forth here. Assumption two is the record facts don't show control. If those were the assumptions that you had, is the answer at that point no injunction because they're just not covered by the law, the non-qualifying entities? This law doesn't cover them, so they have no likelihood of success because it just doesn't cover them. I think that would be correct if they weren't covered by this. If the agency, for example, made a determination that they're not affiliates and the law couldn't be applied to them and there would be no need for an injunction. As I said, ordinarily the agency is the first mover and would make this determination. Why isn't this better brought as an as-applied challenge? I do think it is better brought as an as-applied challenge. I can't tell you, Judge Aframe, what the timeline is for the agency. I think they work. There's money. We're past the date. It is frozen in the sense that it's the decisions they've made as of October 1st. They can't today say we're going to stop doing abortions or we're going to de-associate from the Federation. It's too late, right? I think that is correct, Judge Aframe. That's frozen. So now what are we waiting for? We're waiting for the agency. Is there some interaction with Planned Parenthood going on to collect the materials? What is happening? I'm not aware of any interaction between the agency and Planned Parenthood. My understanding is that the agency is working on guidance that will be provided to the states. When do you understand, maybe you don't have an answer, but let's assume the shutdown, fingers crossed, is over this week. Since October 1st, it's been a month. We're in mid-November, so it's been like a month and a half. December could be January, but the clock is ticking. Planned Parenthood has no idea whether it might get paid or not paid. That's another issue. I'm not in the details of this, Judge Huffey, but there is some time lag built into this whole thing in terms of the states being the ones that provide the reimbursements to the providers with the federal funds that are provided. That whole process can take some time, and so the question is going to be, and it may be the states that have to make a judgment in the first instance when they're deciding whether or not to provide funds that they're requesting federal reimbursement for to a Planned Parenthood affiliate. I can't prejudge how the states are going to look at that or how ultimately the agency is going to look at that. They haven't yet issued guidance. We have probably 50 different models. Some may be similar, but some may be different. That's correct, and the way this ordinarily happens is if a health care provider doesn't receive reimbursements that they think they're entitled to under federal law, they can bring an administrative claim and say, where are these reimbursements? And if it's denied, then they can go to court and have a court look at that question. That's how this ordinarily gets adjudicated. Any further questions? Okay, thank you, and you have five minutes for rebuttal. Thank you. Thank you, counsel, at this time. Counsel to the athlete. Good afternoon to all. Alan Schoenfeld for Planned Parenthood. May it please the court. Congress defunded Planned Parenthood using a set of tailor-made criteria intended to exclude Planned Parenthood and only Planned Parenthood from the Medicaid program. There's no dispute that this was Congress's purpose. The only question is whether Congress's targeting Planned Parenthood through this gerrymandered statute, and I think that's a fair characterization, to exclude members from providing critical health care in a federal program that already prohibits abortion is constitutional. Can I just jump to where we ended?  Let's just say we say the definition of affiliates here is a very narrow definition focused on corporate control. Do you have a problem with that? If the court adopts that construction as a matter of constitutional avoidance or otherwise, that's the court's ruling. I think the place where I differ with counsel for the government is what the court ought to do with that. The record is clear as to what the relationship between and among the members and between and among the members and PPFA is, and certainly at the preliminary injunction stage, there's a likelihood of success on the merits as to the claim that members that do not otherwise qualify under the statute are not covered by the statute under that definition of control. This court can certainly affirm the injunction with respect to the non-qualifying members and hold that they are not covered by the statute and therefore they're not likely to succeed. They're not covered by the statute. That doesn't mean you succeed. That means no one has applied the statute to you. So that would just be the statute correctly construed, measured against these facts. You are not covered. That's good, but I don't feel like the release there would be a preliminary injunction. Well, so they're not likely to succeed on the constitutional claims that depend on some particular construction, setting aside the claims that we have that relate to all of the members as well as PPFA, but there is a declaratory judgment claim in the case. And especially given the government's conduct in this case, we filed it in July. It's November. We are no closer. The court never ruled on those ones, correct? Correct, because she adopted, I think, at the reasonable interpretation of what the government was telling her at that point in time. I mean, your friend said this, and I guess it resonates with me. What is a preliminary injunction of a declaratory release? What does that mean? I think the court has broad equitable powers here with respect to the injunction that was entered in the district court, especially given that there were two separate injunctions. With respect to the non-qualifying members, this court has the authority to enter an injunction and say they are likely to succeed on their claim, that they are not covered by the statute. And during the pendency of the litigation, we can immediately go back to the district court and litigate this case on the merits. But the idea that four months into this litigation, we are no closer to knowing whether the non-qualifying members are subject to this prohibition or not is not the right result in this case. But if we say they are not, shouldn't the injunction as to them then, in their favor, be vacated because they're not covered? This court doesn't simply construe the meaning of affiliate, but instead holds that on this record, the non-qualifying members are not affiliate. I'd be happy with that result. If the court turns off that question on the merits, I'd be very happy with that. All we have, I mean, that seems appealing until you start to think about really all we have before us, because all we have before us are the declarations that were deemed sufficient for Judge Talwani to make the ruling that she did, but it doesn't feel like a robust testing of affiliate under this control definition. You know, I don't know if I understand the relationship. On the one hand, you license the name. You create certain medical standards. And I don't really know, and I don't think anyone in this record, at least I couldn't find in the record really what those are yet. So that's the part that's unknown. I don't think it's unknown. I think the question in the district court was did we show a likelihood of success on the merits. The government was entitled to put in whatever evidence it wanted. It put in, I think, an old set of bylaws from an old entity to meet our facts. They didn't do anything else to disprove them. And everything the government is trying to do, I think you've got the record from Planned Parenthood's perspective about how the members conduct their affairs. You also have the government's effort to explain what they think they mean by control, and everything they have said doesn't meet the legal definition of affiliate even as they give it. So money going laterally across members doesn't happen. Money moving up to the federation and back down to a member is not an indication of control. All of the statutes that the government points to to say the use of affiliate is commonplace, none of them describes anything like what we have here. Judge Afrin, they all describe the scenario you described at the beginning, which is corporate ownership. Some of them go as far as describing the percentage of ownership shares or stock that is necessary to meet the affiliate threshold. There is none of that here. These are independent, nonprofit, 501c3 organizations, their own boards, their own bylaws. If they adopt the bylaws that PPFA requires, all that does is it qualifies them as a member. No one would ever say that an accreditation organization for colleges and universities controls those colleges and universities simply because the colleges meet the requirements of the accreditation society. It's nothing different from what we have here. Somewhere in there, this may be a bad analogy, but as a franchisee, is that an affiliate in a commercial context? That's a good analogy, but it complicates things because I think franchisees and different organizations mean completely different things. McDonald's has franchisees who completely own and operate their franchises versus other franchise structures. I guess when I look at what the government has said on page 24, practical support, technical assistance, consulting services, fundraising support, I wrote in my notes here, that doesn't sound like control. Is that all that we have? I think what you've got is you've got three things. You've got the government saying that in order to avoid the constitutional question, you have to adopt a particular definition of corporate control. Let's set that aside for a moment. Then you've got the hours showing on the facts in the district court about what the relationship between the members and each other and the members and the federation is. That's uncontested. Then you've got the government's effort to say, based on those facts, here's what we think meets the definition that we gave you as a matter of constitutional avoidance, and that's where they come up short. If they're offering that particular definition as a matter of constitutional avoidance, it is clear from this record that they had every opportunity and occasion and invitation to contest that no member meets the definition of affiliate that they are urging you to adopt as a matter of avoidance. And all of their efforts to say, well, this might be an indicator, this might be an indicator, they're all off the mark. Maybe they are treated as a matter of fact as a description of what the members do. They do not qualify for affiliate membership under the definition that they are telling you you must adopt as a matter of avoidance. Let's say we adopt that definition. Why wouldn't we send it back to the district court to just figure out how it applies? Because we are four months into a public health crisis that the government has caused, at least with respect to non-qualifying members, by refusing to litigate that particular issue. We're frozen, though, in the sense of what's done is done. I mean, we're past October 1st, so there aren't really any changes your clients can make to avoid the one-year bar, assuming it will eventually apply. Absolutely, but they certainly need to make everyday decisions about what to do with respect to their Medicaid populations. And they need to decide whether they're going to ask their patients to self-pay, whether they're going to stop paying, whether they're going to use other resources that they might otherwise. The thing is these 10 affiliates, what's called affiliates, they can't go to a client and say, it's bad news, I'm sorry, or it's good news, or it's halfway good, halfway bad, or there's no way to tell anybody what's going to be happening. Correct. They're making decisions under the lack of certainty that this injunction was meant to give them. If they are providing Medicaid services unrelated to abortion, right now they are taking a huge risk that those will go unfunded. Correct. And they're either asking patients to self-pay or they're making precisely this type of decision. The states can be helping them out. It's happened apparently with a couple of the states, correct? California provides all the abortion funding, for example. Well, we're not talking about abortion funding, right? So the Medicaid program disqualifies abortion. No one says that any Planned Parenthood member is using Medicaid funds for abortion. It seems like if we sent this back and said, Judge Talani, deal with this quickly, it doesn't seem like it's all, I mean, you hold all the evidence, right? You would have your witnesses, they could do their cross-examination of your witnesses and they would have to decide. I don't see where there's some complex discovery that would go on because you have all the information.  You would do a direct and explain how you operate and they would cross it. If this court rules that way, we will be in the district court that day or the next day seeking an injunction or an emergency declaratory judgment on that basis. I obviously don't need to tell the court equitably to do its job. The time is of the essence here and we need to wait for, according to the government, we need to wait for the agency to act in the first place, which I just think is wrong. We then need to wait for this court and then we need to be back in front of Judge Talani. So we will be there. We will be making these arguments. I still don't think that it is the right use of, you know, the right deployment of the court's equitable authority to allow this to persist more than four months in. So that when your friend comes back, I'm asking the right question. Your position is, one, okay, control, that's a good test. Black flaw definition of control, that's a good test. Two, we put in declarations that explain what we do and how we relate to our members, two. And three, all they've done is make a list of things that even if true, do not mean control. Therefore, you're in a position to decide this issue and not just send it back to Judge Talani but say, no, here's what control is and the relationship of the Federation to its members is not control. I agree with everything you said except I would describe my position on the first point slightly differently. I do agree with the government that as a matter of constitutional avoidance, this is a construction the court could adopt to avoid some of the constitutional arguments. I don't agree, given the congressional intent here, that it is what Congress intended. Congress clearly intended to ensnare the entire Planned Parenthood Federation. And the government's, you know, I think sort of after the fact, narrowing of what this means to corporate control, and I know they say that this wasn't their position in the district court, but it's the position in front of this court. Page 17 of their reply is filled with the same sort of stuff about this broad relationship among the members that they say qualifies as an affiliate. So do I believe that it is the right interpretation for purposes of constitutional avoidance? It's hard for me to argue about that. Do I think Congress intended that narrow definition? No, because it so obviously does not include the non-qualifying Planned Parenthood members. Of course they would say, well, no, this was a desire, you know, the large Planned Parenthood organizations are providing a large number of abortions and we're going to use the hammer, the cudgel of Medicaid funding to get them out of that business. And we couldn't maybe have done that pre-DOBS, but we can do it now. And so that's what we're doing. And while it's legal for them to do it, we don't have to encourage it. In fact, we can really discourage it because your business model is one of not just providing abortion services, it's all reproductive health services, and we're going to use that against you. And that's basically what they're doing. And that strikes me as, you know, hardball maybe, but a hardball to get a policy choice they want. Why is that the wrong way to think of the case? So I don't disagree. Well, I do disagree with the legal conclusion for two reasons, at least two reasons. The first one is the government's entire premise here is that Congress had a rational justification in seeking not to subsidize abortion. Counsel for the government said that multiple times, including in his first sentence to the court. There is no subsidy here, not as a matter of fact. I'm going to follow that, but then I don't. So, okay, the Hyde Amendment said we're not going to pay for it, but then because these members are groups that do other things, you get money in the door, and, you know, it's said in the brief, money is fungible. And so the idea is, okay, you can decide now that money came in the door to use some of it to fund this activity that we, Congress, don't want to see funded. I mean, that's... That's exactly the argument the United States government in AOSI, and that's exactly what the court said was not true as a matter of law or as a matter of fact in that case. In which one? In AOSI. The unconstitutional condition? Correct. And what's notable about that case, and I'll come back to the specific fact of this case in a second, but what's notable in that case is not only did the Supreme Court say that that's just wrong, right? The idea that the federal money comes in and supplants private money is incorrect. What the federal money comes in and does is it funds the federal programs. But the court there observed that the only case the government could cite for that proposition was Holder v. Humanitarian Law Project, and it said that was not a useful case for the government because in Holder there was a specific legislative record pointing out that those entities, the entities covered by that statute, were using their nonprofit affiliates to cover for the violent activities of their other affiliates, and so there was a demonstrated record that money was moving to subsidize that. The Supreme Court rejected the argument, this kind of freeing up argument as a matter of law in AOSI, and contrasted a case where there would be a record that there was actual evidence that money was moving across that. Every single court to have considered this argument that not providing federal funding frees up money to be used for other purposes has rejected it. The Supreme Court in AOSI distinguishing Holder. Your position, it is illegal for Congress. So, I mean, just, you don't have, this is not an unconstitutional condition because they're not trying to take away a constitutional right now. So, as your position, it is illegal to say we're going to deprive you funding in this program because if we do that, if we make that sort of difficult choice for you, you're like, well, we still want that money, so we're going to stop this thing you don't like. My position, my position is under both the Equal Protection Clause and with more bite under the Bill of Retainers that the government has to come forward with some rational basis. The only one the government has offered here, you heard it from the government itself, is this anti-subsidy proposition. It does not work as an option. Let me just reframe that as we'd like to convince them to get out of providing abortions. I don't see how that's any different from Moreno where the court said we want to encourage hippies to adopt traditional family structures and the court said a bare desire to harm a politically disfavored group doesn't satisfy rational basis. This isn't because they are reproductive doctors. It was because they're doing a service that we don't want to see done. I think in that case it was because they were living together unmarried, which is what the USDA regulations require, that you be married, and the court said this is nothing more than a bare desire to harm a politically disfavored group. All of the rationales that the government has offered. Something like that breaks down from disfavored group to conduct. We don't want to see done and we have power over them because we give them a lot of money and we can use that power to get them to do what we want, which is not do this thing. Even if that were a rational basis, and I'm not conceding the point, even if that were a rational basis, Congress still has to pursue it rationally and they haven't done it here because they haven't targeted the group of abortion providers. None of the criteria that they adopt here is tied in anyway. What do you mean the group of abortion providers? They haven't targeted, yeah, I mean they targeted Planned Parenthood, right? If the government's goal was to do what Judge Aframe said, the criteria that they would have adopted would have been different and they would have been tied rationally to the provision of abortion. Maybe it's the number of abortions. The government said earlier today the one reason they targeted Planned Parenthood is because the bigger part of the Planned Parenthood business is the Medicaid reimbursements and they just have bigger bang for their buck than going after, say, private hospitals. $800,000 in Medicaid refunds or reimbursements in 2023 is not a proxy for the percentage of Medicaid covering non-abortion care provided by any of the providers in the Medicaid network. None of these criteria is explicable on their own or taken together as anything other than a desire to harm Planned Parenthood. Do you mean Planned Parenthood combined is the largest single provider of abortion services? I don't know. There's nothing on the record on that. The only thing on the record is that 4% of the care that Planned Parenthood provides is abortion. 96% is non-abortion care. Even when the government is operating under a rational basis scrutiny, the government is obligated to proceed rationally. There has to be some rational basis for the distinctions that they're drawing. The Supreme Court has said many, many times incrementalism is fine in rational basis review. If there's a rational basis to the incremental proceeding, Congress doesn't need to take on the entire issue at one time. Congress can't say we want to solve some particular problem and then discriminate on an unjustified or illicit basis in order to pursue that goal. I hate to say this, but it looks like what they did is say, okay, let's use $800,000 as a proxy for large. I don't know if it is, but let's just use it as a proxy for large. And then we're going to target rural areas through the regulatory definition and reproductive services. So if it's rural areas, these are places where there won't be lots of options. If we target the large providers in these rural areas, there won't be other places for these people to go, and so abortion won't really be an option for them. So the evidence on the record, at least as a matter of fact, goes into what happens is to the contrary. When Planned Parenthood affiliates or members are closed and their health centers are closed, the number of abortions goes up. And that's been known for decades because states have experimented by excluding Planned Parenthood members from state non-abortion programs. Okay, that may be how it works on the ground, but at least what I said, logically you can say it because I said it. Does that mean that if Congress can't operate on that? No. I mean, even on a rational basis, the Supreme Court has said, even on a rational basis, Dover v. Heller, the parents have to find some footing in reality. And what you've just said, respectfully, it's not realistic. It's not how the world works. There's data on the ground about what happens when Planned Parenthood health centers are closed as a result of these efforts to target Planned Parenthood. It doesn't have the effect that Congress says it's trying to advance. All it does is it affects Planned Parenthood and Planned Parenthood patients. If Congress wanted to challenge abortion provision in the United States or they wanted to discourage it, it's a different way to go about it. The record in front of this court is unmistakably clear that they were trying to hurt Planned Parenthood and Planned Parenthood only. And the fact that two other entities got caught up collaterally in the sweep does nothing to disturb either the Equal Protection Analysis or the Dover-Vitainter Analysis. The Ninth Circuit said as much in Sea, River, Marine where, you know, the ship owners of the Exxon Valdez were the clear targets of the statute and, you know, there were nonetheless other entities that were caught up in it. And the court said that's one factor among many, but when it is unmistakably clear from the record that Congress's intent was to target a particular entity or the owners of a particular entity there, that satisfies the specification criteria. I think what the government loses in the way that they stick with the very small handful of Dover-Vitainter cases in the Supreme Court is that the Supreme Court has acknowledged the lack of Dover-Vitainter case law and it's made it very clear that that's not meant to hem in courts of appeals going forward. They said in Nixon, our treatment of the scope of the clause has never precluded the possibility that new burdens and deprivations might be legislatively fashioned that are inconsistent with the Dover-Vitainter guarantee. I think of the Selective Service case. That was leveraging money to get a class of people to do something. Join, sign up. But they weren't signing up. And then something that seems not directly related to signing up, their ability to get higher education funds. Well, the court said that it was directly related because it was targeting the same population, the same age. It assumed that they were college-going people if they weren't registering for Selective Service. Congress is using a funding mechanism to encourage behavior. And so this is a funding mechanism of reproductive monies that go to Planned Parenthood for doing medical care, and we're going to leverage that to get this organization to do something. I think the better analogy is Lubbock, where Congress said we are not going to appropriate funds for the jobs of these three government lawyers because we don't want them. And the Supreme Court said that's a Dover-Vitainter. Congress can't decide that. The difference to me is you can still provide medical care. And those lawyers could still be lawyers. They just couldn't be government. Yeah, but neither can we. We can still provide medical care, which is not in the Medicaid program. I think every bill of the Tender Clause just tries all of the facts are different, and the Supreme Court recognizes that in every single case, as do the courts of appeals. They're all their own special animals. The through line in those cases is Congress does not get to choose public enemies and decide that they are going to target them for punishment. And if you look at the specification criteria, they are all met here. And if you look at the punishment criteria, whether you're looking at... Your friend will say, I'm sure, that they are either the largest or one of the largest providers. Does that not create the ability to say that we're going to start there? No, because the distinction between Planned Parenthood and whoever the other largest providers are has to be rational. That's not what we've done here. You don't hear members of Congress saying, we're going after abortion full stop. They say we're going after big abortion, which is synonymous with Planned Parenthood, which the government doesn't dispute. Or they simply say they're going after Planned Parenthood. Then some of them say we're going after Planned Parenthood because of their political advocacy. But I'm setting that aside for a moment, given what the government has said about the meaning of the Affiliate Clause. I still think that's part of the record and it's relevant. The government could have done something different here. But what this court needs to evaluate is whether the way that they have approached this problem. The Equal Protection Clause governs not just what Congress can do, but how it does it. And the way they have chosen to solve this problem violates both Equal Protection and the Bill of Attenders Law. Sorry, you go. On the Bill of Attenders issue, we've sort of skirted around the punishment component. Can you speak to that generally and maybe also tell me what you think your best case is? I think it's probably Lovett. I think it's Lovett from the Supreme Court. I also think ComEd is a particularly good case from the Second Circuit. So there are three tests, Your Honors, we're going over with the Governance Council. First one, under historical, I do think that Lovett is the best case. It is precisely the facts here. It is an appropriations measure where the Congress said we're not going to appropriate funds to fund these three salaries. All it meant is that they could no longer be government lawyers. It left open the option of doing literally anything else, and the court said that that was the Bill of Attender. So historically, disqualifying someone from a particular field of work satisfies the historical test. Now, the government relies on cases like Kaspersky and Bell South and TikTok, and they say, well, these line-of-business restrictions are fine because historically excluding someone from a particular line of business doesn't violate the Bill of Attender Clause. But what they ignore is that in TikTok and Kaspersky and Bell South, the D.C. Circuit said that those line-of-business restrictions are only okay when they are, quote, in pursuit of legitimate goals such as public safety or economic regulation, because the functional test is a proportionality inquiry. And so is the burden you are imposing on the punished party proportionate to what you're trying to accomplish here? Abortion is already unlawful. It's not part of the Medicaid program. So the question is, is the burden that's being imposed on Planned Parenthood uniquely disproportionate to any goal that the government could legitimately pursue? And here it is, disqualifying Planned Parenthood from providing non-abortion care in the context of a program that already forbids abortion for the reason that you want to ensure that the federal government is not subsidizing their abortion activity, which we've already discussed, is wrong as a matter of law, is wrong as a matter of fact, does not meet the proportionality inquiry under the functional test. And then as to the motivational test, the record is as clear here as it could possibly be that what Congress was intending to do was punish Planned Parenthood. And what it shows is that? I think the statements from the Speaker of the House, I think the long history of this legislation going back to 2017, I think the chicanery in response to the bird issues about the parliamentarian, I think all of that is part of a picture that the court gets that what Congress was trying to do here is to figure out how to punish Planned Parenthood uniquely among abortion providers. Can I ask you about Lovett? So you say it's the same. And so Lovett says, someone will say, I want to work for the government. And the answer is, well, you can't because you're not going to be paid. And for you it's, we want to provide care for underprivileged people. And I guess the answer would be, or I think your friend is going to say, you can, we're just not going to pay for it. It's not a prohibition. I mean, you can't work for the government as a government lawyer. Like you can't do that job. You can do this job, you're just not going to have help doing it from us. Right, but I mean it's the same. So it depends on the level of generality and how broad or narrow the answer is. And so I think Lovett sounded a little bit tamer on the fact that Congress refused to appropriate funds for these three particular government lawyers. It was just an appropriations measure. So was this one. It was just, all it meant was that they could do their job as government lawyers unpaid. Same thing here. All it meant was that they couldn't work for the government. They could work for a private firm. They weren't disbarred. Same thing here. The Medicaid program is a vital part of the entire United States public health infrastructure. Planned Parenthood has acquitted itself particularly well as participants in the Medicaid program for decades. No one has ever raised a concern of it. So to the extent we're going back to the punishment inquiry, what is the thing that Planned Parenthood has been found guilty of here? It's essentially a congressional determination that we are unfit as Medicaid providers. There are already mechanisms for rooting out fraud and misconduct and inconsistency with the goals of the Medicaid program. Isn't that a legislative prerogative? No, not when it's based on impermissible criteria and it's not in furtherance of a rational basis. Let me also go, you mentioned since 2017 there's been efforts to curtail this, and until now they haven't been successful. But Dobbs has decided in 2022, and I'd like to point out and ask you, I'm sure you're familiar with the Family Planning Association of Maine case. Why is that decision an error? What do you have to say about that decision? The Maine Family Planning case? Yes. I do think it's wrong. I think that to the extent it found that there was no equal protection violation, it was incorrect for other reasons we've been discussing. But to be entirely clear to Chelsea, no part of our argument depends on constitutional protection for the provision of abortion care. Nothing we are arguing depends in any way on Dobbs. And so whether Dobbs, I mean Planned Parenthood better than anyone, understands the legal impact and the practical impact of Dobbs, no part of our argument depends on there being any type of special protection for the provision of abortion. I think I talked about the motivational test on the... Which do you think is your best? I think the functional test is the best. I think Con Ed is a particularly useful case to answer, to go back to your question, George Montecalvo. I do think that level to the extent we're looking at the Supreme Court, but I would view the Supreme Court decisions in light of the cautionary note they continue to sound about the limited utility of any particular bill of attainder case, given that what they're trying to get at is precisely the set of facts. But one of the interesting things about Con Ed is, number one, it says there's no real historical analog here, but that doesn't need to detain us because this meets the functional test and is a bill of attainder on that test. But also in Con Ed, the Second Circuit says there are rational bases for this statute. Con Ed is about after a kind of shutdown at a nuclear power plant, the New York State Legislature says, oh my gosh, this is terrible. The rate payers should not have to bear the cost of this. So Con Ed is precluded from passing on any of the cost of that outage to the rate payers. And the Second Circuit said there are rational bases for that. We want to allocate costs for an accident in an appropriate way, and we want to deter negligent conduct going forward. Nonetheless, it was so disproportionate to the goals that the New York State Legislature was trying to accomplish to preclude any pass on that the court said it was nonetheless a bill of attainder. And so I think it's that type of analysis, that kind of facts and circumstances specific analysis, that really tried to get at what the New York State Legislature was trying to accomplish there that I think provides the best analog. Any further questions? Just to make sure I understand that, if you're putting that in the language of this case, it is disproportionate to take funding away from providing necessary reproductive medical services that are not abortions to a huge number of people at a huge dollar value all for the idea that maybe we will dissuade these entities from also providing abortions? Yes, that is correct. I also would just qualify with the last part of yours. That last bit is not the rationale that you heard the government's lawyer offer. What he offered was concern about subsidizing abortion by providing If you change it from that to mine, does that make it change it from where his is legal and mine is illegal? No, both of them are illegal. Both? Or legal. My side wins under both. Is it impermissible to use the funding cudgel to get them out of abortion? You're saying it's a punishment because there's a disproportionality. In my way of describing it, they want to use their funding power to get a certain policy accomplishment that they want to have achieved, and you're saying it's irrational to want to get that somewhat limited policy objective by such a disproportionate deprivation of medical care to needy people. Yes, I agree with you, but I would add two additional points. One is, they're not trying to get everyone out of the abortion game. They're just trying to get Planned Parenthood. Inclusiveness is a hint. Absolutely, and the D.C. Circuit made that specific point in its post-scandal bill of attainment analysis. So that's number one. And number two, the only fact in the record is that when you defund Planned Parenthood members from providing non-abortion care, the result is an increase in abortions. That's in the Custer Declaration, paragraphs 63 and 71. It's the only public health evidence in the record. Because they don't get the contraceptive care they need. They don't get any care, any family planning care. And as a result, the likelihood is not that there's a decreasing number of abortions in the aggregate, but in fact that there are more abortions. And so Congress has to justify this as a rational basis to advance some goal, and there's simply no connection. It is so discontinuous from the goal, any goal, that this court could posit, even on the rational basis. Rational basis with bite, I take it, is one where that thought fits in, that there's no good reason for this. And it also fits in in attainder because it shows the disproportionality because of the irrationality of what they're doing? Absolutely, and I think that that's true. I think that Con Ed makes that point. But just to make the point, I think it works on a rational basis without bite, right? So even if you are under a strict economic regulation, pure rational basis, the Supreme Court has said repeatedly, FCC versus Beach, Doe versus Heller, there's got to be some rationality. So our onus on rational, pure rational basis reviews to negatize every possible justification the government comes up with, and we've done that. Yeah, and the struggle is between rational and wrong, and I'm not sure they're the same. I completely agree with you, and I've done my best to explain to you why it's not just wrong, it is irrational, right? Doing something that is disproven on the record, doing something that is so discontinuous with the ends the government is attempting to pursue, that's not just wrong. The government is entitled to be wrong, but they can't be irrational, and they can't draw distinctions that are based on supposition and irrationality. And I think that the way the Supreme Court treated this subsidy point in AERSI makes exactly that point. It would have been a very – well, I'll end there. Thank you. Thank you, Counsel. At this time, would Counsel to the Appellant please reintroduce himself on the record as a five-member vote? Eric McArthur. I will start out where my friend on the other side finished with the AOSI case. That was a case where the Supreme Court was applying strict scrutiny because the statute there conditioned federal funding on the adoption of certain beliefs. We're obviously not in any sort of strict scrutiny here. We're under rational basis review, which is – On the same case. This is a case where there's an HIV funding program that Congress funds, and it says if you want the funding outside of the program, you have to adopt a anti-prostitution policy, and the concept is that's a First Amendment violation because you're compelling their speech, essentially. You're making them say this thing they don't want to say. Right. You can't condition federal funding on speech outside the program. What we can tell you is this is not a non-constitutional conditions case because while abortion may be legal in places, it's not constitutionally protected, so you can use your power to dissuade them from doing something that's legal but not constitutionally guaranteed. Congress can absolutely do that, and here Congress did not condition any funding on anyone's speech outside of the program. They conditioned it on corporate affiliation, which is the only First Amendment issue, and that's within the program because Congress can rationally make this outside the program. Can you use your spending power to dissuade someone from something legal, but you decide to be undesirable that's not constitutionally protected outside the program? Yes, Congress can do that if it's not protected activity. It can use funding to encourage or discourage conduct that it disapproves of or otherwise does not want to subsidize, and that is exactly what Congress did here, and I'd like to address the Hyde Amendment. My friend on the other side said, well, this can't rationally be about ceasing the subsidization of abortion because we already have the Hyde Amendment, but the district court in the main family planning case, I think, put it well when the court said the Hyde Amendment does not represent the high watermark of what Congress can do in terms of ceasing to subsidize abortion. Is there any difference between the way I was characterizing it and the way you're characterizing it? So he tried to say what I was saying is different than you. So you said you're saying this is about, quote, subsidizing abortion, and I was thinking of it more as you help them out a lot, and if you take the help away, they will really have no choice but to stop doing the thing that Congress doesn't like. Are those different? I think they're different rational bases, but, of course, Congress can act on more than one rational basis. Their burden on rational basis review, which is just about the most deferential standard known to law, is to negate every conceivable basis, and here there are at least three rational bases that I think this statute serves. One is to cut off subsidies for abortion by cutting off subsidies to the abortion providers. The other is to reduce the number of abortions, and the third is simply to dissociate the Medicaid program from abortion providers because Congress disapproves of that conduct and otherwise doesn't want to subsidize it. Do you agree on number two, reducing the number of abortions, that the only thing we have in the record is when funding is limited to Planned Parenthood? I do disagree with that. I mean, my threshold point is this isn't a record argument. Congress doesn't need record-based facts. It can draw lines based on rational speculation, but here, for example, at page 193 of the appendix, this is the Custer Declaration. It says if Planned Parenthood members were to stop performing abortions, that there is no way that the remaining abortion providers in this country could find the capacity to meet the need for abortion services no longer met by Planned Parenthood members. So Congress could certainly make the judgment that these entities, and as I mentioned before, I think one of the key things about these criteria, particularly the nonprofit and the essential community provider, is Congress is looking at entities that are taking a lot of federal funds and are likely to be particularly dependent on those funds. One rational thing Congress could think is, well, those entities might be most likely to stop performing abortions in order to maintain their Medicaid funding, which would reduce abortions. And if they don't, and substantial numbers of them have to scale back their services or are at high risk of closure, which is, again, what their own declarations say, that too would reduce the number of abortions. So it's not just about decreasing the subsidy. It's also about decreasing the number of abortions, and Congress certainly had a rational basis to conclude that those were possible effects of the conditions that it adopted. I would like to address the Lovett case briefly. If I may, this case is nothing like Lovett. That was a case, number one, it wasn't just about appropriations. The court said this isn't just an appropriations law and construed the statute as a permanent bar on those named individuals' ability to be civil servants and said that's just like precluding someone from practicing a profession. Is that just because you have to be paid when you work? Is that the idea? I think that was the essential idea behind it, but I think your point, Judge Afrin, was exactly right, which is that they couldn't be civil servants. Here Planned Parenthood can continue being health care providers. They can even continue providing health care to Medicaid-eligible individuals. They just can't receive federal reimbursement for it, and they could even receive federal reimbursement if they had ceased providing abortions before October 1st, and that is a key thing that wasn't there in Lovett and is there in other cases like Selective Service that deal with federal funding. This is prospective. They had an opportunity to avoid the sanction by complying with the conditions that were set three months in advance. We asked what their best case. Do you think yours is Selective Service? I think Selective Service is a good case for us. I think Communist Party is a very good case for us. Again, the Supreme Court has never held a law that looks anything like this, generally applicable terms, prospective, about eligibility to participate in a federal benefits program. Let's say we didn't have the Byrd Rule and that whole thing went away and it was a million dollars, which would make it only Planned Parenthood. Would that matter? I don't think that would change the analysis because, again, that had been designated by name or based on past ineradicable conduct. The Supreme Court said quite clearly in Communist Party, as long as there is an opportunity to avoid the burden of the law by changing your perspective, your present conduct, there can be no complaint of a tainter. Their answer to that is to say, well, historically there were some bills of a tainter that left the designated parties an opportunity to escape the punishment by doing some prescribed act. But those sorts of bills of a tainter depended on their first being designated parties based on their past ineradicable conduct. And I think if you look at Judge Stahl's concurring opinion in the Elgin case at pages 20 to 21. No eradicable initial conduct. It's not that you did abortions in the past. It's we just don't want you doing them going forward. This has nothing to do with what you did in the past? That's correct. Whether they provided abortions in the past is completely irrelevant to the operation of this law. The only element of the various conditions that looks to past ineradicable conduct is whether the entity received more than $800,000 in Medicaid reimbursements in 2023. But, number one, one could think plausibly that Congress set out to punish those entities for receiving more than $800,000. That's a limit. That's not something where they're being designated. Number two, that's only one of the elements that doesn't suffice by itself to designate the class. We couldn't even designate the class as of the time this lawsuit was brought. It could only be determined as of October 1, almost two months after Congress enacted the law, and the Supreme Court has never held that a prospective law like that is a bill of attainder. Just so I'm clear on implementation, are you aware of any timetable or dates by which the agency will act? I have not been given a timetable, Judge Mutakaba, and it is the final point that, if the court would indulge me, I would like to make. Briefly. Pardon? Briefly, yes. Okay, thank you. And this goes to the question of whether the court could sustain this injunction based on the conclusion that these entities are the ones that don't independently satisfy the criteria are not affiliates. Number one, that is not the basis for the district court's injunction here, and this court has said that it ordinarily will not affirm an injunction based on a ground different from what the district court did, especially where it's a fact-bound issue, and this one is a fact-bound issue. We have not had an opportunity to develop the record for discovery, for example, to ask for and get their bylaws and examine what degree of control the federation exercises over the members. So all of that should be left for the district court. Let's just assume on page 24 I look at your list of things that are there, practical support. I won't read them all, but you know what I'm talking about. And as I understand control, that doesn't measure up. Is your point that's what we know now? We haven't had a chance? Yes, we haven't had a chance even to have discovery into that. And those things that you quote are just pieces of the declaration that you pulled out to say, we don't really know what these are, but maybe if we dig deeper, those might be the places we would press to see if there's control? That's correct. We were looking at the declarations they submitted and said that even those declarations do have some indicia of control. Thank you. Okay, Mr. McArthur, Mr. Schoenfeld, thank you both for your zealous advocacy. Court is adjourned.